UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.  09-82434-CIV-COHN/SELTZER

FRANCES EDWARDS,

       Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

    THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed,

respectively, by Plaintiff Frances Edwards ("Claimant") and by Defendant Michael J.

Astrue, Commissioner of Social Security ("Commissioner").  The motions were referred to

United States Magistrate Judge Barry S. Seltzer pursuant to Magistrate Rule 1(c) and (d),

Local Rules of the United States District Court for the Southern District of Florida.

    The cross-motions present the following issue: whether the Administrative Law

Judge ("ALJ") properly determined that Claimant is not disabled because she can perform

her past work as payroll clerk.  The undersigned concludes that the ALJ's determination

is flawed, as he did not properly evaluate various medical source opinions.  Accordingly,

---

[1] Although other circuits have found the summary judgment device inappropriate for
deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d 1383,
1389 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court has
reviewed the record and based its judgment on a finding of substantial evidence in the
administrative record. See Lovett v. Schweiker, 667 F.2d 1, 2-3 (5th Cir. 1981).

the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 18) be GRANTED to the extent that it seeks to remand the case for the ALJ to properly evaluate the medical source opinions and that the motion be DENIED in all other respects. The undersigned further RECOMMENDS that Defendant's Motion for Summary Judgment (DE 21) be DENIED.   Finally, the undersigned recommends that the administrative decision be REVERSED and REMANDED to the Commissioner with instructions that the ALJ articulate legally sufficient grounds for discounting the opinions of Dr. Lichtblau and Dr. Stolzer and that he reconcile his finding that Claimant can perform light work with his placing "great weight" on the opinion of Dr. Price.

II.     PROCEDURAL HISTORY

On September 8, 2006, Claimant filed for a period of disability and disability insurance benefits ("DIB"), alleging that she became unable to work on March 6, 2006. Tr. 68-73. In her Disability Report, she attributed her alleged inability to work to diabetes, hypertension, neuropathy, infected sciatic nerve, severe carpal tunnel syndrome in both hands, and multiple herniated and bulging discs. Tr. 80, 106. The Social Security Administration denied her application initially and upon reconsideration. Tr. 50-51, 56-57.

Thereafter, Claimant was granted an administrative hearing, which was held on April 21, 2008. Tr. 23-37. On June 26, 2008, the ALJ rendered his decision, finding that Claimant was not under a "disability" as defined in the Social Security Act. Tr. 15-22. On October 27, 2009, after considering additional information, the Appeals Council of the Social Security Administration denied Claimant's request for review, which left the ALJ's decision standing as the final decision of the Commissioner. Tr. 1-3.

On December 18, 2009, Claimant filed a Complaint (DE 1) in this Court. On April

23, 2010, the Commissioner filed an Answer (DE 12), together with the administrative

record (DE 13). On June 8, 2010, Claimant filed a Motion for Summary Judgment (DE 18).

And on July 16, 2010, the Commissioner filed Defendant's Motion for Summary Judgment

with Supporting Memorandum of Law (DE 21). Thereafter, the undersigned directed both

parties to submit supplemental memoranda, which Claimant and the Commissioner each

filed on July 23, 2010 (DE 23, 24).

The matter is now ripe for decision.

III.  FACTS

The undersigned has reviewed the Statement of Facts contained within Defendant's

Motion for Summary Judgment and finds that it fairly and accurately summarizes the

relevant portions of the administrative record.[2]

> Plaintiff alleged disability beginning March 6, 2006, due to
> diabetes, hypertension, neuropathy, infected sciatic nerve,
> severe carpal tunnel syndrome in both hands, and multiple
> herniated and bulging discs (Tr. 68, 80, 106). At the time of her
> alleged onset of disability, Plaintiff was 54 years of age (Tr.
> 68). She had two years of college and training as a practical
> nurse (Tr. 87). The ALJ found that she had past relevant work
> as a payroll clerk (Tr. 21, 81, 93).
>
> On April 3, 2006, Plaintiff presented to Bassam Sayegh, M.D.,
> with complaints of worsening thigh pain (Tr. 137-39, 276-78).
> She denied shortness of breath (Tr. 137-38, 276-77). Plaintiff
> had a hardness between the popliteal fossa and buttock, but
> her distal pulses were good and she had good range of motion
> in her back and extremities (Tr. 138, 277). An MRI showed a
> mid-thigh possible lipoma (Tr. 141, 185, 435). Dr. Sayegh
> performed an excisional biopsy (Tr. 138, 140, 277, 282). On
> April 25, 2006, he noted that the mass was lipoma (Tr. 142,
> 280).

---

[2] The undersigned has bracketed minor corrections to the Statement of Facts.

On May 3, 2006, Plaintiff presented to neurologist Sonia Canaves-Nunez, M.D. (Tr. 157-58). Dr. Canaves-Nunez noted that Plaintiff was employed as a child support enforcement officer (Tr. 157). Although she had mild weakness and a limp in her left lower extremity, Plaintiff's strength was "5/5," her reflexes and coordination were normal, and she had no pronation (Tr. 158). Dr. Canaves-Nunez assessed suspect left diabetic sciatic neuritis, and past history of low back pain with left sciatic pain, possible recurrence with radiculopathy (Tr. 158).

On May 5, 2006, Plaintiff underwent magnetic resonance imaging (MRI) of her lower spine (Tr. 159, 274, 434). Results showed herniated nucleus pulposus, nerve root impingement, degenerative disc disease with bulging, stenosis, impingement, and tear (Tr. 159, 274, 434). On May 8, 2006, electromyography showed diabetic neuropathy and radiculopathy (Tr. 145). Dr. Canavez-Nunez recommended weight-loss and physical therapy (Tr. 145).

On May 24, 2006, Plaintiff presented to Michael Tonks, M.D., with complaints of left leg pain and numbness (Tr. 188-90). She denied shortness of breath (Tr. 189). Dr. Tonks noted that Plaintiff was working full-time and recorded no medication side effects (Tr. 188-90). Although she had some paravertebral tenderness, Plaintiff's patellar and Achilles tendons were "2+," and her strength was "5/5"(Tr. 189). Dr. Tonks assessed lumbar radiculopathy, diabetic neuropathy, morbid obesity, and degenerative disc disease with degenerative joint disease (Tr. [189-]90).

On June 9, 2006, Plaintiff presented to Suresh Kachman, M.D., with complaints of leg pain (Tr. 172). She denied shortness of breath or leg edema (Tr. 172). Although her abdomen was obese, Plaintiff had no calf swelling (Tr. 172). Dr. Kachman assessed lumbosacral disk disease and diabetes mellitus (Tr. 172).

On June 29, 2006, Plaintiff returned to Dr. Tonks for epidural steroid injections, and tolerated the procedure well (Tr. 166-67, 199). On July 27, 2006, injections were aborted because of scarring or inflammation (Tr. 161, 194, 196, 198). On August 25, 200[6], Plaintiff told Dr. Tonks that her physical therapy was not helping and that Hydrocodone, although effective, was interfering with her functioning (Tr. 192). Dr. Tonks prescribed

Oxycontin (Tr. 192).

That same day, Plaintiff presented to Catherine Low, M.D., for an annual diabetic eye exam (Tr. 290-92). Dr. Low noted no medication side effects (Tr. 290-92). Plaintiff had 20/[25] left eye visual acuity and 20/[50] right eye visual acuity (Tr. 290). Both eyes were stable (Tr. 291). Dr. Low stopped Plaintiff's Glucophage because it was no longer needed (Tr. 292).

On September 26, 2006, Plaintiff returned to Dr. Tonks (Tr. 191). She reported that her back pain was about the same and that Oxycontin made her feel sick (Tr. 191). Dr. Tonks suggested going to Craig Lichtblau, M.D., for a disability evaluation (Tr. 191).

On October [4], 2006, Plaintiff went to Dr. Lichtblau (Tr. 428). A cervical spine MRI showed straightening of the cervical lordosis, disc herniation/protrusion, and impingement (Tr. 421-22[]). A nerve conduction study showed bilateral carpal tunnel syndrome[,] right side severe with sensory axonal loss and left side moderately severe with demyelination (Tr. 360, 423, 429). A bilateral renal ultrasound was normal (Tr. 182).

In an undated Disability Report - Adult completed in connection with Plaintiff's application, she wrote that she stopped working on March 6, 2006, because she could not stand, sit, or walk very long (Tr. 80). She also wrote that she had not worked after her conditions first bothered her and that she was not working now (Tr. 80). On October 13, 2006, she wrote in a Work History Re[po]rt hat she had worked as payroll manager from 1990 to 1996 (Tr. 93).

On October 13, 2006, Plaintiff completed a pain questionnaire in connection with her application (Tr. 89-92). It appears to be completed in her own handwriting (Tr. 89-92). Plaintiff wrote that she experienced constant severe pain in her lower back that radiated down her left leg, and pain and numbness in both arms (Tr. 89). She reported that her medication helped her pain but did not eliminate it, and made her feel dizzy, tired, dysfunctional, and lacking energy (Tr. 89). Plaintiff wrote that she was unable to sit or walk for any length of time or concentrate for too long because of her pain (Tr. 92). Finally, she wrote that she was unable to clean her house or wash her hair, but that she could dress "o.k.," do light laundry, cook light meals, and drive short distances (Tr. 91). On October 24,

5

2006, Plaintiff saw Amos O. Dare, M.D., at the request of Dr. Lic[ht]blau, for back, leg, neck, shoulder, arm, and hand pain (Tr. 283-84). She also reported occasional shortness of breath (Tr. 283). Dr. Dare noted no medication side effects (Tr. 283-84). Although she was morbidly obese, had diffuse weakness of "4+/5" in her extremities, hypo[re]flexic reflexes, and could not perform lumbosacral flexion and extension, Plaintiff's gait, station, and sensation were normal and she was in no acute distress (Tr. 283-84). Dr. Dare assessed intractable back and leg pain, opined that her obesity was accounting for much of her morbidity, and recommended an aggressive weight loss program (Tr. 284).

On October 30, 2006, Plaintiff returned to Dr. Lichtblau (Tr. 368-70). She denied shortness of breath and Dr. Lichtblau noted no medication side effects (Tr. 368). Although she had spine tenderness, positive Phalen's sign, persistent right thenar atrophy, and diminished deep tendon reflexes and sensation, Plaintiff's pulses were "2+" and equal, her plan[t]ar flexion was "5-/5," left dorsiflexion "4/5," left knee extension "4/5," left hip flexion "3/5," grip "5-/5," pinch "4/5," and right hip dorsiflexion "4/5," and she had a slow gait unassisted (Tr. 368-69). Dr. Lichtblau opined that Plaintiff was not able to pursue any gainful employment (Tr. 369, 370).

On November 9, 2006, Ira Price, M.D., reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment (RFCA-Physical) (Tr. 348-55). He wrote that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit 6 hours, and stand and/or walk at least 2 hours in an 8-hour workday and should never climb ladders, ropes, or scaffolds, (Tr. 349, 350). He also opined that she could only occasionally push and/or pull with her lower extremities, but had no manipulation, visual, or communicative limitations (Tr. 349, 351-52). Finally, he wrote that Plaintiff could balance, stoop, kneel, crouch, and crawl occasionally, should avoid moderate exposure to extreme cold, and should avoid concentrated exposures to extreme heat, vibration, and hazards such as machinery or heights (Tr. 350, 352).

On December 12, 2006, Dr. Lichtblau completed an estimation of Plaintiff's motor function (Tr. 356). He wrote that she had "3/5" left hip flexion, "4/5" right hip flexion dorsiflexion, "5[-]/5" left plantar flexion, and "4/5" left dorsiflexion/knee flexion (Tr. 356). He also opined that her grip was "5-/5," her pinch was

6

"4/5," and that she had difficulty with fine manipulation in both hands (Tr. 356). On January 3, 2007, Plaintiff returned to Dr. Lichtblau (Tr. 365-67). She denied shortness of breath and a physical examination was unchanged overall (Tr. 365). Dr. Lichtblau opined that Plaintiff could not work four hours per day on an uninterrupted basis (Tr. 367).

On January [2]4, 2007, Plaintiff presented to Roberto J. Acosta, M.D., with complaints of hand pain and tingling in her hands and feet (Tr. 357-61). Dr. Acosta noted that Plaintiff was taking Neurontin and noted no medication side effects (Tr. 357). Plaintiff had some mild tenderness and interphalangeal right index finger joint stiffness, and positive Tinel's sign in both wrists, but her light touch was intact, she had good active range of motion in both elbows, and she was negative for instability, atrophy, or gross triggering (Tr. 357). Dr. Acosta assessed bilateral carpal tunnel syndrome and right index finger stenosing tenosynovitis, and administered a left carpal tunnel Kenalog injection (Tr. 358).

On February 14, 2007, Plaintiff returned to Dr. Lichtblau (Tr. 362-64). She denied shortness of breath and Dr. Lichtblau noted no medication side effects (Tr. 362-64). Physical examination was unchanged overall (Tr. 362). Dr. Lichtblau opined that it was his "medical opinion that [Plaintiff] remain[ed] permanently and totally disabled" (Tr. 364).

On March 5, 2007, Dr. Licthblau completed a second estimation of Plaintiff's motor function (Tr. 371). He wrote that her plantar flexion was "5-/5," left dorsiflexion "4+/5," left knee extension "4+/5," left hip flexion "4/5," right hip dorsiflexion "4/5," pinch "4/5," and grip "5-/5" (Tr. 371). He also wrote that she was insensate to cold, pinprick, and light touch in the lower extremities below the knee and ambulated with a slow gait unassisted (Tr. 371).

On March 21, 2007, Plaintiff returned to Dr. Acosta for follow-up (Tr. 379). Plaintiff had positive Tinel's sign in both wrists but her light touch was intact, her capillary refill and active digital range of motion were good, and she was negative for gross triggering (Tr. 379). Dr. Acosta recommended surgical decompression (Tr. 379). On April 25, 2007, during follow-up with Dr. Acosta following surgical decompression, Plaintiff reported some continuing pain and numbness but was doing well overall (Tr. 378). She had good capillary refill and digital

7

range of motion and no evidence of infection or erythema (Tr. 378).

On April 17, 2007, and April 25, 2007, Plaintiff returned to Dr. Lichtblau (Tr. 372-74, 375-77). She denied shortness of breath and reported beneficial effect from Lidoderm patches (Tr. 372, 375). Dr. Lichtblau noted no medication side effects (Tr. 372, 375). Although physical examination remained unchanged overall, Dr. Lichtblau wrote that Plaintiff's condition appeared to be worsening (Tr. [] 375-7[7]).

On May 18, 2007, Gary Cater, D.O., reviewed Plaintiff's medical records and completed an RFCA-Physical (Tr. 380-87). He noted that Plaintiff was status post carpal tunnel syndrome surgery with good post-operation follow-up (Tr. 381). He opined that she should be recovered from the surgery and capable of work consistent with his RFCA-Physical within 12 months (Tr. 381). In estimating Plaintiff's physical abilities, Dr. Cater opined that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally, and sit, stand/and or walk about 6 hours each in an 8-hour workday (Tr. 381). Finally, he opined that she had no postural, manipulation, communicative, visual, environmental, or pushing or pulling limitations (Tr. 381-84).

On July 23, 2007, Plaintiff presented to Nicole Basile, M.D., for chronic kidney disease evaluation (Tr. 451-52). She denied shortness of breath and Dr. Basile noted no medication side effects (Tr. 451-52). Plaintiff had no edema in her extremities and no vertebral tenderness in her back, and a neurological examination was without-asterixis (Tr. 451). On July 31, 2007, Plaintiff reported that she was having trouble regulating her pain medications but denied shortness of breath (Tr. 449). On October 1[6], 2007, and December 11, 2007, she denied shortness of breath and had no vertebral tenderness (Tr. 442, 446).

On January 7, 2008, Plaintiff presented to William A. Stolzer, M.D., for a consultative examination (Tr. 389-99). Dr. Stolzer noted that Plaintiff walked with a cane in her right hand to support her left leg; he noted no medication side effects (Tr. 389). Plaintiff held herself in a very rigid fashion and would not relax (Tr. 390). She had moderately limited lumbar spine range of motion, moderate spasm, and some sciatic notch and left sacroiliac area tenderness with positive straight-leg ra[i]sing on the left, but no pathological reflexes, no compression pain, and

8

normal sensation and motor function (Tr. 391, [395,] 396). A lumbar spine x-ray showed disc space narrowing (Tr. 391). Dr. Stolzer assessed severe left-sided sciatica secondary to degenerative disc and herniated disc disease, peripheral neuropathy, chronic cervical spine discomfort, carpal tunnel syndrome surgery unsuccessful on the [right], and extreme uncontrolled exongenous obesity (Tr. 390). He opined that he was not sure that Plaintiff could do her previous job (Tr. 390). He wrote, however, that he thought that "there [was] an exaggeration of symptoms to a degree as well as the obesity causing a major part in this but [did not] think that [would] be controlled," and that it "appear[ed] as if this lady could be able to do her job which is reasonably sedentary however will not make the accommodations that she needs to do so . . . [s]he certainly is not able to do her job at the present time the way she is and it would take a significant effort on her part to get to that point and I'm not sure she's willing or able to do that" (Tr. 390).

That same day, Dr. Stolzer completed a Medical Source Statement of Ability to Do Work- Related Activit[ies] (Physical) (MSS-Physical) (Tr. 400-05). He opined that Plaintiff could lift and carry up to 20 pounds occasionally, sit, stand, and walk 2 hours each at one time and total of 2 hours each in an 8-hour workday, and occasionally operate foot controls and tolerate exposure to humidity, wetness, vibration, dust, odors, fumes, moving mechanical parts, and extreme heat and cold, but never unprotected heights (Tr. 401, 402, 404). He also opined that a cane was medically necessary for Plaintiff to ambulate and that she could never balance, stoop, kneel, crouch, crawl, or climb stairs, ramps, ladders, or scaffolds (Tr. 401, 403). Finally, he opined that she could frequently reach, handle, finger, feel, and push/pull with both hands (Tr. 402, 405).

On January 15, 2008, Plaintiff presented to Steven L. Kanner, D.O., for a consultative examination (Tr. 408-11). Plaintiff denied shortness of breath and Dr. Kanner noted no medication side effects (Tr. 408). Plaintiff's deep tendon reflexes were "[+2]/4," her grip was "4/5" with fine and gross dexterity maintained, she had symmetrical motor and sensory, her cervical and thor[a]columbar spine had full range of motion, she had no edema in her extremities, and Tinel's was negative (Tr. 410). Although she walked dragging her left leg and could not walk on her heels and toes, Plaintiff could walk without an assistive device and had no difficulty rising from a

9

chair and initiating ambulation (Tr. 410). Dr. Kanner opined that Plaintiff was very obese but that she had full range of motion in her cervical and thor[a]columbar spine and no upper extremity motor or reflex deficits (Tr. 411).

That same day, Dr. Kanner completed an MSS-Physical (Tr. 412-17). He opined that Plaintiff could lift and carry up to 20 pounds frequently and 21 to 50 pounds occasionally, sit, stand, and walk 1 hour each at a time, and sit a total of 5 hours, and stand and walk a total of 4 hours each in an 8-hour workday (Tr. 412-13). He also opined that she could balance frequently, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders, or scaffolds occasionally, continuously reach, handle, finger, feel, and push/pull with both hands, continuously operate foot controls with both feet, and continuously sustain exposure to humidity, wetness, dust, odors, fumes, vibrations, unprotected heights, moving parts, and extreme heat and cold (Tr. 414-16). Finally, he opined that a cane was not medically necessary for ambulation (Tr. 413).

On August 18, 2008, Plaintiff returned to Dr. Basile (Tr. 438). She denied shortness of breath and Dr. Basile noted no medication side effects (Tr. 438). Plaintiff's chronic kidney level was fairly stable and Dr. Basile opined that she was fairly stable on medication (Tr. 438).

At the April 21, 2008 hearing, Plaintiff testified that she understood that she had a right to be represented by an attorney or other representative, but chose to proceed without one (Tr. 25[-26]). She signed a Waiver of Representation form acknowledging that she understood that she had the right to be represented by an attorney or other capable person of her choice at her hearing, but chose not to be (Tr. 67). She also acknowledged that she had been given the opportunity to review the exhibits in her file, which included her medical records, and that she had no objection to the exhibits being admitted (Tr. 67).

Plaintiff testified that she stopped working on March 6, 2006, because of severe problems with her back, including bulging discs (Tr. 30, 32-33). She reported that she had difficulty walking as a result, and that she used a scooter bought for her by her nephew (Tr. 31). She also related that she had bought a cane at the recommendation of her physical therapist (Tr. 34). Plaintiff testified that she did not like to drive because of

10

severe carpal tunnel syndrome in her left hand (Tr. 28). She said that she had undergone carpal tunnel surgery for her right hand but had experienced problems from the surgery (Tr. 29). Plaintiff testified that she was diabetic and hypertensive, and had only 30 percent kidney functioning, but was not on dialysis (Tr. 32). She also reported that she had neuropathy and macular degeneration in her eyes (Tr. 33). Plaintiff testified that she lived with her brother, did not socialize, and did not do housework (Tr. 2[7], 35). Finally, she reported that she could not walk longer than 5 minutes or further than 1/4 of a block at a time, and could stand using her cane for only 10 minutes (Tr. 34).

Defendant's Motion for Summary Judgment at 2-9 (DE 21).

## IV.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the court's role is a limited one. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." Richardson v. Perales, 402 U.S. 389 (1971); Bloodsworth, 703 F.2d at 1239.  "Substantial evidence" is evidence that a reasonable person would accept as adequate to support the challenged conclusion. Richardson, 402 U.S. at 401; Walden v. Schweiker, 627 F.2d 835, 839 (11th Cir. 1982).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## V.   ANALYSIS

### A.   The Sequential Evaluation

A "disability" is defined as an inability

11

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period not less than 12
> months.

42 U.S.C. § 423(d)(1)(A). In determining the merits of a claim for benefits, the court must

consider the evidence as a whole, including: 1) objective medical facts or clinical findings;

2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as

testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age,

education, and work history. Walden, 672 F.2d at 839.

To arrive at a determination as to disability, the ALJ must undertake the sequential

evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first

determine whether the claimant is presently engaged in substantial gainful employment.

20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the

second step and determine whether the claimant suffers from a "severe impairment." An

impairment is severe if it significantly limits the claimant's physical or mental ability to

perform basic work activities. 20 C.F.R. § 404.1520(c). If a severe impairment is not

found, the ALJ will conclude that there is no disability; if a severe impairment is determined,

the ALJ will proceed to the next phase of the analysis. Id.

The third step requires the ALJ to determine whether the claimant's impairment

meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. § 404.1520(d).

If so, the ALJ will find the claimant disabled without considering age, education, and work

experience. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual

functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(e). The Regulations define "residual functional capacity" as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). This determination takes into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. Id. The ALJ must then compare the residual functional capacity to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. § 404.1520(e).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, the burden returns to the claimant to prove an inability to perform those jobs. Id. These shifting burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy. 20 C.F.R. § 404.1520(f).

To help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, Subpt. P, App. 2. The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe medically determinable impairment from doing past relevant work. 20 C.F.R. § 404.1569. The Guidelines are composed of detailed grids and rules which,

13

based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. § 404.1569. The Guidelines, therefore, are not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991). Further, they may not be used when the claimant suffers from non-exertional limitations, such as mental impairments. Hargis, 945 F.2d at 1490; Walker, 826 F.2d at 1003. When the Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of residual functional capacity. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry his burden through the use of a vocational expert. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Wingo v. Bowen, 852 F.2d 827, 831 n. 4 (5th Cir. 1988); Walker, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Bowen, 889 F.2d at 50.

B.  Application of the Sequential Evaluation by the ALJ

After considering all of the evidence before him, the ALJ concluded that Claimant is capable of performing "a minimally reduce[d] range of light work" and can return to her past work as a payroll clerk; she, therefore, is not disabled for purposes of the Social Security Act. Tr. 17, 21.

In arriving at this conclusion, the ALJ addressed each step in the evaluative

14

sequence.[4] He first observed that Claimant had not engaged in substantial gainful activity since March 6, 2006, her alleged onset date. Tr. 17. The ALJ next found that Claimant has the following "severe" impairments: "back disorder disc degenerative, carpal tunnel syndrome, hypertension, obesity, kidney problems and diabetes." Tr. 17. The ALJ then found Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. Tr. 17.

The ALJ next assessed Claimant's residual functional capacity ("RFC"). As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints. After reviewing the evidence and the testimony, the ALJ discounted Claimant's complaints. Tr. 18. More specifically, he found that "[C]laimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." Tr. 18. Then, after considering the record before him, the ALJ found that Claimant has the RFC to perform "a minimally reduced range of light work as defined in 20 C.F.R. 404.1567(b)."[5] Tr. 17.

---

[4] Preliminarily, the ALJ noted that Claimant had acquired sufficient quarters of coverage to remain insured through December 31, 2010. Tr. 15, 17. Accordingly, Claimant was required to establish disability on or before that date to be entitled to a period of disability and disability insurance benefits. Tr. 15.

[5] The Code of Federal Regulations defines "light work" as:

> [work involving] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing

Having found that Claimant is capable of performing light work, the ALJ next considered whether she has the ability to perform her "past relevant work as payroll clerk." Tr. 21. The ALJ determined that she is able to return to that past work because the Dictionary of Occupational Titles classifies the position as "sedentary semi-skilled work."[6] Tr. 21. In addition to finding that Claimant is able to perform her past relevant work as it is generally performed in the national economy, the ALJ found that she could do so as she had actually performed it. Tr. 21. Because Claimant remains capable of performing her past work as a payroll clerk, the ALJ found that she "has not been under a disability, as defined in the Social Security Act, from March 6, 2006 through the date of [the] decision." Tr. 21.

C.      Discussion

Claimant disputes the findings and conclusions of the ALJ. Claimant argues that the ALJ erred in three respects:  1) he failed to develop the record as required; 2) he improperly discounted her subjective complaints; and 3) he improperly evaluated the opinions of certain medical sources. For the reasons set forth below, the undersigned finds (only) Claimant's third argument persuasive.

---

> and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[6] DOT, Volumes I and II, Fourth Edition, Revised 1991, Section 215.382-014.

1.    ALJ's Development of the Record

Claimant argues that the ALJ erred in failing to fully develop the administrative record. See Plaintiff's Motion at 16-18 (DE 18). More specifically, Claimant argues that the ALJ should have attempted to re-contact the treating physicians to secure their opinions regarding the functional impact of her conditions. See Plaintiff's Motion at 14 (DE 18). In particular, Claimant argues that her obesity is "especially functionally limiting," yet the ALJ failed to assess the impact of her excessive weight on her back and lower extremity symptoms. Tr 15, 16.   Stated differently, Claimant contends that because the record does not contain an RFC assessment specifically keyed to only her obesity-related limitations, the ALJ erred in not obtaining a further assessment from her treating or examining sources.

Although the ALJ does have a duty to develop a full and fair record, see Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997), he is not required to re-contact a treating source where the record contains sufficient evidence from which to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1512(e); see also Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (An ALJ is not required to seek additional clarifying statements from treating physician unless a crucial issue is undeveloped).   Here, the record contains abundant evidence of Claimant's obesity, which was factored into all the assessments. That record reflects that Claimant's treating  and examining sources frequently noted, and attributed her impairments to, her obesity, and they frequently instructed her to lose weight. Tr. 145, 190, 284, 390, 411, 442. Notwithstanding her well-documented obesity, Claimant regularly denied shortness of breath, enjoyed a good range of motion, and suffered no

17

edema in her extremities.[7]  Tr.  126, 137, 172, 174, 189, 276, 357, 362, 365, 368, 372, 375, 378, 410, 438, 446, 449, 451.[8]  Significantly, the Social Security Administration, at its own expense, supplemented the records of Claimant's treating physicians by sending her for  additional (consultative) examinations.  And from his review of the entire record, the ALJ made an express finding that Claimant's obesity is a "severe" impairment.  Tr. 17. Accordingly, Claimant's obesity was fully considered.  Because the complete record allowed for an adequate assessment of Claimant's impairments – the record did "not show the kinds of gaps. . . necessary to demonstrate prejudice," Graham, 129 F.3d at 1423 – no basis exists to remand for further development on this issue.

## 2.    The ALJ Properly Discounted Claimant's Subjective Complaints

The ALJ found that Claimant's subjective complaints are "not credible."  Tr. 18. Claimant, however, contends that the ALJ erred in discounting her subjective complaints. She specifically argues that "none of the three reasons proffered by the ALJ for rejecting [her] credibility is [legally] sufficient."  Plaintiff's Motion at 17 (DE 18).  According to Claimant, the ALJ improperly found that her use of an assistive device was not medically necessary and that she was a malingerer, and he improperly relied on her daily activities.

The ALJ's assessment of a claimant's subjective complaints is governed by 42 U.S.C. § 423(d)(5)(A), which states in part:

---

[7] The undersigned notes that Claimant did not allege disability based on sleep apnea.

[8] The undersigned notes that although Claimant initially appeared without counsel, she successfully obtained more than 200 pages of treatment notes, and she never alleged difficulty in obtaining other medical records.  Tr. 25.  Indeed, after Claimant later secured counsel, the only supplemental records submitted by counsel those from Dr. Basile reflecting treatment from July 23, 2007, until August 18, 2008.  Tr. 437-453.

18

> An individual's statement as to pain or other symptoms shall
> not alone be conclusive evidence of disability as defined in this
> section; there must be medical signs and findings, established
> by medically acceptable clinical or laboratory diagnostic
> techniques, which show the existence of a medical impairment
> . . . which could reasonably be expected to produce the pain
> or other symptoms alleged and which, when considered with
> all evidence . . . would lead to a conclusion that the individual
> is under a disability.

The Eleventh Circuit has stated that an individual alleging disabling pain must show not

only evidence of an underlying medical condition, but also either "objective medical

evidence that confirms the severity of the alleged pain arising from that condition or . . .

that the objectively determined medical condition is of such a severity that it can

reasonably be expected to give rise to the alleged pain." Landry v. Heckler, 782 F.2d

1551, 1553 (11th Cir. 1986) (citing Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1985)).

"This standard also applies to complaints of subjective conditions other than pain." Holt

v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Only once this standard is met must the

ALJ then consider a claimant's subjective complaints. Foote v. Chater, 62 F.3d 1553,

1560-61 (11th Cir. 1995). The ALJ, however, is not required to credit those complaints; he

may discount them provided he "articulates adequate reasons for doing so." Id. at 1561-

62.

In discounting Claimant's subjective complaints, the ALJ articulated adequate

reasons. First, he properly considered her activities of daily living. Claimant had

handwritten answers to a pain questionnaire in October 2006, in which she stated she is

able to cook light meals, dress herself, do light laundry, shop, and drive short distances,

all despite her impairments. Tr. 91. The ALJ noted her daily activities continue in spite of

her allegations of incapacitating pain. Tr. 20. And he correctly considered her activities

in assessing her credibility. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).

Along with Claimant's daily activities, the ALJ considered inconsistencies in the record. Although Claimant had testified in an administrative hearing and claimed on her undated Disability Report that she had not worked following her March 6, 2006 alleged onset of disability, the record suggests otherwise. Tr. 30-31, 80. In April and May 2006 – following her alleged onset of disability – Dr. Cavanes-Nunez noted that Claimant was employed as a child support enforcement officer, and Dr. Tonks noted Claimant was employed full-time as a law enforcement officer. Tr. 157, 189. See 20 C.F.R. § 404.1571 (work done during any period in which claimant alleges disability may show that claimant was able to do more work than alleged). In addition, although Claimant complained about side effects from different prescribed medications, her physicians regularly recorded no side effects from medication. Tr. 89, 188-89, 191, 192, 283-84, 290-92, 357-58, 362-64, 365-67, 368-70, 372-74, 375-77, 389-90, 408-11, 438, 451. An ALJ may properly consider such inconsistencies in assessing a claimant's subjective complaints. See 20 C.F.R. §§ 404.1529, 416.929.

Second, the ALJ's determination that Claimant did not require an assistive device was appropriate. Although Plaintiff testified that she utilized a scooter and purchased a cane because her physical therapist asker her to get one, the record contains no evidence that either had ever been prescribed to her. Tr. 31, 34. Indeed, Claimant regularly denied shortness of breath, had a good range of motion, and was without edema in her extremities. Tr. 126, 137, 172, 174, 189, 276, 357, 362, 365, 368, 372, 375, 378, 410, 438, 446, 449, 451.

Third, the ALJ properly noted that Claimant may have been malingering. Although

not certain, Dr. Stolzer made of point of noting that Claimant may be exaggerating her symptoms. Tr. 390. Further, he believed that Claimant "could be able to do her job which is reasonably sedentary however will not make the accommodations that she needs to do so. . . ." Tr. 390. This notation is consistent with record entries showing that Claimant failed to reduce weight, which would have facilitated her return to work. Tr. 145, 284. An ALJ may properly consider such medical opinions in assessing whether Claimant is disabled, as she alleges. See 20 C.F.R. § 404.1527(a).

The ALJ, therefore, adequately articulated the grounds upon which he relied in discounting Claimant's subjective complaints, and his credibility assessment is supported by substantial evidence.    Where an ALJ clearly articulates a credibility finding with substantial supporting evidence, as the ALJ did here, a reviewing court may not disturb such a finding.   See Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

### 3.    Evaluation of Medical Source Opinions

Claimant faults the ALJ's evaluation of certain medical source opinions.   In particular, he faults the ALJ for rejecting the opinion of a treating physician, Dr. Lichtblau, and the opinion of a consultative physician, Dr. Stolzer.   And she faults the ALJ for mischaracterizing the opinion of a State Agency reviewing physician, Dr. Price.

Claimant first faults the ALJ for not articulating good cause for discounting the opinion of the treating physician, Dr. Lichtblau. Tr. 10-11. An ALJ must give substantial or considerable weight to the opinion of a treating physician unless "good cause" is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory

21

or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232,

1240-41 (11th Cir. 2004).

Here, in summary fashion, the ALJ effectively dismissed – according "little weight"

– to the opinion of a treating physician, Dr. Lichtblau. On February 14, 2007, Dr. Lichtblau

opined "that [Claimant] remain[ed] permanently and totally disabled." The ALJ discounted

that opinion with the simple assertion that it was "on an issue left to the [C]ommissioner."

Tr. 20. Not only did the ALJ fail to elaborate further, he also failed to address any other

opinion offered by Dr. Lichtblau:

- On October 6, 2006, Dr. Lichtblau opined that Claimant "is unable to pursue gainful employment at any capacity." Tr. 370.

- On January 3, 2007, Dr. Lichtblau opined that Claimant "could not work four hours per day on an uninterrupted basis." Tr. 364.

- On February 14, 2007, Dr. Lichtblau opined that Claimant "could not work four hours per day on an uninterrupted basis." Tr. 367.

- On April 17, 2007, Dr. Lichtblau opined that Claimant's "condition appear[ed] to be actually worsening." Tr. 377.

- On April 25, 2007, Dr. Lichtblau opined that Claimant "could not work four hours per day on an uninterrupted basis." Tr. 374.

Although the ALJ is vested with the authority to decide the ultimate issue of

disability, 20 C.F.R. § 404.1527(a)(2), he is nonetheless required to address a treating

physician's opinion addressing what his patient can physically do in light of her

impairments. 20 C.F.R. § 404.1527(d)(2). Indeed, the Regulations state that the ALJ "will

always give good reasons in our notice of determination or decision for the weight we give

your treating source's opinion," id., and as the Commissioner has acknowledges "the ALJ

should always consider the medical opinions." Defendant's Supplemental Brief at 2 (DE

23).  The Regulations define "medical opinions" as "statements from physicians . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite [her] impairment(s), and [her] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Here, the ALJ not only failed to articulate "good cause" or provide "good reasons" for discounting Dr. Lichtblau's judgments about the nature and severity of Claimant's impairments and his prognosis of what she remained capable of doing despite her restrictions, the ALJ simply ignored Dr. Lichtblau's judgments and prognoses.  The law, however, does not permit an ALJ to simply ignore the opinion of a treating physician. Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992).

Claimant next faults the ALJ for granting Dr. Stolzer's opinion "little weight."  Tr. 13. Dr. Stolzer, a consultative orthopedist, found that Claimant could lift and carry up to 20 lbs. occasionally, could sit, stand, and walk for a total of 2 hours in an 8-hour workday, and must use a cane to ambulate.  Tr. 400-01.  He further found that she could reach, handle, finger, feel and push/pull frequently with both hands and could occasionally operate foot controls.  Tr. 402.  He found that she could not balance, stoop, kneel, crouch, crawl, or climb stairs, ramps, ladders or scaffolds.  Tr. 402.  The ALJ stated that he accorded "little weight to the opinion of Dr. Stolzer because it is inconsistent with the record as a whole"; yet, the ALJ failed to explain why he found it to be inconsistent with the record. The ALJ, therefore, failed to articulate an adequate basis for discounting Dr. Stolzer's opinion.  Tr. 21.  Indeed, to the extent that Dr. Stolzer opined that Claimant could not perform the light

23

work[9] that was assessed by the ALJ, his opinion is actually consistent with the opinions of

Dr. Price, Dr. Kanner, and Dr. Lichtblau; none of those physicians opined that Claimant is

capable of performing light work. Like Dr. Stolzer, Dr. Price, a State Agency reviewing

physician, found that Claimant was capable of standing and walking for a total of 2 hours

in an 8-hour workday. Tr. 349.  Dr. Kanner, a consultative physician selected by the

Commissioner, opined that Claimant could sit for a total of 5 hours in an 8- hour workday

but could only stand/walk for a total of 4 hours in an 8-hour workday.  Tr. 413.  And Dr.

Lichtblau opined that Plaintiff was not able to pursue any gainful employment (Tr. 369,

---

[9] Social Security Ruling 83-10 defines "light work":

Light work.  The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing - - the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which requires greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances).  Relatively few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time.  The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.  Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

1983 WL 31251, at *5-6 (S.S.A.)(emphasis added).

24

370). Given the consistency of Drs. Price, Kanner, and Lichtblau with Dr. Stolzer – at least to the extent that none believe Claimant is capable of light work – the ALJ must articulate his reasons for summarily asserting that Dr. Stolzer's opinion was inconsistent with the record as a whole.  Tr. 17, 349, 369, 370, 413.

Finally, the ALJ mischaracterized Dr. Price's opinion when he stated that this State Agency physician had opined that Claimant "was able to perform at the light level of exertion."  Tr. 21.  The ALJ proceeded to commend Dr. Price for "provid[ing] specific reasons for [his] opinion about the [C]laimant's residual functional capacity showing that [his] opinion was grounded in the evidence in the case record, including careful consideration of the [C]laimant's allegations about her symptoms and limitations."  Tr. 21. For these reasons, the ALJ accorded Dr. Price's opinion "great weight."   Dr. Price, however, never found that Claimant could perform light work; indeed, he found that Claimant could only stand/walk for 2 hours, far less than the 6 hours required for light work.[10]  The ALJ, therefore, needs to reconcile his RFC finding for "light work" with his placing "great weight" on the opinion of Dr. Price.

## VI.   RECOMMENDATION

The ALJ fully developed the record and had substantial evidence upon which to discount Claimant's subjective complaints.  Yet, the ALJ failed to articulate "good cause" for discounting the opinion of a treating source, Dr. Lichtblau, and he failed to explain his finding that the opinion of a consultative examiner, Dr. Stolzer, was inconsistent with the record; he also mischaracterized the opinion of a State Agency reviewing physician, Dr.

---

[10] The Commissioner's supplemental brief acknowledges the ALJ's error, but deems it harmless.  See Defendant's Supplemental Brief at 7-8 (DE 23).

Price.  For these reasons, a remand is warranted.  Accordingly, the undersigned respectfully RECOMMENDS as follows:

1.      That Plaintiff's Motion for Summary Judgment (DE 18) be GRANTED to the extent that it seeks to remand the case for the ALJ to properly evaluate the medical source opinions and that the Motion be DENIED in all other respects;

2.      That Defendant's Motion for Summary Judgment (DE 21) be DENIED; and

3.      That the ALJ's decision be REVERSED and REMANDED to the Commissioner with instructions that the ALJ articulate legally sufficient grounds for discounting the opinions of Dr. Lichtblau and Dr. Stolzer and that the ALJ reconcile his RFC determination that Claimant can perform light work with his placing of "great weight" on the opinion of Dr. Price.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted

or adopted by the district court except upon grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 2nd day of August 2010.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

The Honorable James I. Cohn
United States District Court Judge

All counsel of record